### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

JOSHUA FRANKLIN,

      Petitioner,

v.                                  Case No. 4:21-cv-184-MW-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Joshua Franklin, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, Doc. 18, providing relevant portions of the state court record, Docs. 17, 20. Franklin replied. Doc. 24. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Franklin is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background Facts and Procedural History[2]

On October 11, 2012, Franklin and then-girlfriend Tamisha Berger got into an argument at Franklin's home. Berger had been living with Franklin. Berger called her friend, Latonya Askew, told her about the argument, and asked Askew to come pick her up. Over the next two or more hours, Askew and Franklin exchanged heated text messages. Franklin warned Askew not to come to his home. Askew confirmed that she was coming to pick up Berger.

Askew arrived at Franklin's home with her boyfriend Robert Simmons-Goodwin and two other companions (Winston Terry and Cedric Davis). Franklin was standing at his car in the driveway. Askew got out of her truck and exchanged words with Franklin while Goodwin helped Berger load her belongings into Askew's truck. Askew called Franklin profane names, which angered Franklin. Franklin pulled out a gun, extended his arm, and opened fire on Askew, shooting her in both arms. Berger and Goodwin jumped in between Askew and Franklin to shield Askew. Franklin continued shooting. One of Franklin's shots struck Goodwin near his heart and killed him.

---

[2] The facts are drawn from the evidence presented at Franklin's second trial, viewed in the light most favorable to the State. *See* Doc. 17, Ex. 16 at 138 – Ex. 18 at 10 (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Askew and Berger got into Askew's truck to drive to the hospital, believing that Goodwin was in the back of the truck. After driving a short distance, however, Berger and Askew looked back to see Goodwin lying face down in the street, Franklin fleeing in his car, and Franklin driving over Goodwin's legs as he fled. Askew and Berger drove back to Goodwin, called 911, and remained with Goodwin until emergency medical services and the police arrived.

In Leon County Circuit Court Case No. 2012-CF-3405, a grand jury indicted Franklin for First-Degree Premeditated Murder of Goodwin (Count I); Attempted First-Degree Premeditated Murder of Askew (Count II); Aggravated Assault of Berger with a Firearm (Count III); and Being a Convicted Felon in Possession of a Firearm (Count IV). Doc. 17, Ex. 4.[3] Franklin's defense was that he acted in self-defense. Franklin's first trial ended in a mistrial after the jury deadlocked. Doc. 17, Ex. 5.

At his second trial, Franklin again asserted that he acted in self-defense. Defense counsel argued that Askew, Goodwin and their companions physically threatened Franklin; that the gun was not Franklin's but rather belonged to the victims; and that the gun discharged during a struggle. The defense called Rydell

---

[3] Citations to the state-court record are to the electronically filed exhibits provided with the State's answer. *See* Doc. 17. Citations to page numbers of a particular exhibit refer to the numbers appearing in the State's footer at the bottom of the page.

Tyson who testified that (1) he was with Askew right before she left to pick up Berger; (2) Askew was accompanied by Goodwin, Terry, and Davis; (3) Askew had a gun in her purse; (4) Askew talked about "jumping on" Franklin and taking his money; and (5) Davis's shirt had a bulge at the waistband resembling a hidden firearm.

The jury found Franklin guilty of the lesser-included offenses of Second-Degree Murder (Count I); Attempted Second-Degree Murder (Count II); and Improper Exhibition of a Firearm (Count III). Doc. 17, Ex. 8. The jury made special findings that (1) Franklin discharged a firearm during the murder of Goodwin which caused Goodwin's death; and (2) Franklin caused moderate injury to Askew during his attempt to murder her. *Id*.

The trial court adjudicated Franklin guilty of the offenses and also adjudicated him a Prison Releasee Reoffender ("PRR"). For the murder, the trial court sentenced Franklin as a PRR to imprisonment for life with a 30-year mandatory minimum. Doc. 17, Ex. 10 (Sentencing Tr.); Doc. 17, Ex. 9 (J. & Sentence). The court sentenced Franklin to 30 years of imprisonment for the attempted murder, to run concurrently with the life sentence. The court sentenced Franklin to 11 months and 29 days of time served for unlawfully exhibiting a firearm (Count III). At sentencing, Franklin resolved the remaining charge, Count IV, by pleading guilty to

misdemeanor Unlawful Exhibition of a Firearm, with a sentence of time-served. Doc. 17, Ex. 10 at 40-44.

On January 26, 2018, the Florida First District Court of Appeal ("First DCA") affirmed the judgment and sentence *per curiam* and without written opinion. *Franklin v. State*, No. 1D16-3717, 239 So. 3d 634 (Fla. 1st DCA 2018) (Table) (copy at Doc. 17, Ex. 21).

On March 8, 2018, Franklin filed a state habeas petition alleging ineffective assistance of appellate counsel, which he later amended. Doc. 17, Exs. 23-28 (Am. Pet.). On May 15, 2019, the First DCA summarily denied the petition on the merits. *Franklin v. State*, No. 1D18-1047, 271 So. 3d 1235 (Fla. 1st DCA 2019) (copy at Doc. 17, Ex. 29).

On September 10, 2018, Franklin filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 17, Ex. 37 at 4-50 (Mot. for Postconviction Relief (not including appendix)). On April 1, 2019, the state circuit court conducted an evidentiary hearing and denied relief on all claims. Doc. 17, Ex. 53 at 46-125 (Evidentiary Hr'g Tr.); Ex. 53 at 37 (Order). The First DCA affirmed *per curiam* and without written opinion. *Franklin v. State*, No. 1D19-1344, 301 So. 3d 908 (Fla. 1st DCA 2020) (Table) (copy at Doc. 17, Ex. 57). The mandate issued September 22, 2020. Doc. 17, Ex. 57. Franklin's petition for certiorari review in the Florida Supreme Court was dismissed for lack of jurisdiction on October 5,

2020. *Franklin v. State*, No. SC20-1449, 2020 WL 5884691 (Fla. Oct. 5, 2020) (copy at Doc. 17, Ex. 58).[4]

While Franklin's postconviction appeal was pending, on October 15, 2019, Franklin filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Doc. 17, Ex. 64 at 5-11 (Mot. to Correct Illegal Sentence (not including appendix)). On May 18, 2020, the state circuit court partially granted and partially denied the motion. Doc. 17, Ex. 67 at 81-103. The court granted the motion only with regard to the sentence on Count II, and appointed conflict counsel to represent Franklin at resentencing. Doc. 17, Ex. 67 at 7-8. The First DCA affirmed *per curiam* and without written opinion. *Franklin v. State*, No. 1D20-1719, 313 So. 3d 587  (Fla. 1st DCA 2021) (Table) (copy at Doc. 17, Ex. 71). The  mandate issued April 6, 2021. Doc. 17, Ex. 71.

On September 1, 2021, Franklin was resentenced on Count II (Attempted Second-Degree Murder) to 15 years of imprisonment to run concurrently with the life sentence imposed on Count I (Second-Degree Murder). Doc. 17, Ex. 1 at 15.[5]

---

[4] In the meantime, on February 27, 2019, Franklin filed a *pro se* petition for writ of habeas corpus in the First DCA, claiming that he was entitled to immediate release because he acted in self-defense. Doc. 17, Ex. 30. The First DCA transferred the petition to the Leon County Circuit Court. On March 13, 2019, the state circuit court denied the petition. Doc. 17, Ex. 32.

[5] Before and after Franklin was resentenced, he filed additional applications for postconviction relief and other collateral review in the state courts, none of which

Franklin filed his *pro se* federal habeas petition on April 29, 2021. Doc. 1. The petition raises five claims of ineffective assistance of trial counsel. The State asserts that each claim fails for one or both of these reasons: (1) the claim is procedurally defaulted; (2) the claim lacks merit. Doc. 18.

## II. RELEVANT LEGAL PRINCIPLES

### A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731–32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (quoting 28 U.S.C. § 2254(b)(1)(A)) (alteration adopted). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate

---

relate to the ineffective-assistance-of-trial-counsel claims he raises in his federal habeas petition. *See* Doc. 17, Exs. 1, 72-84.

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" (quoting *Kelley*, 377 F.3d at 1344–45)).

When a petitioner fails to exhaust his federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839–40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural

> rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted, alteration adopted).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id*. at 892.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no

reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. The *Schlup*

standard is very difficult to meet:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare. To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that that was not presented at trial.

*Schlup*, 513 U.S. at 327.

## B.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that

was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the
majority holding, written by Justice Stevens for the Court (joined by Justices
O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the
opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined
by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)
in part II (529 U.S. at 40313).  The opinion of Justice Stevens in Part II was joined
by Justices Souter, Ginsburg, and Breyer.

facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court first must determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v.*

*Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

**C.    Federal Law Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the

outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III. DISCUSSION

**Ground One**       **"Trial Counsel Was Ineffective for Failing to Conduct an Investigation Into Petitioner's Testimony When His Testimony Was The Only Evidence Supporting Theory of Defense." Doc. 1 at 9.**

Franklin claims that defense counsel John Eagen was ineffective for failing to "investigate," *i.e.*, ask Franklin, what he would say if he testified, and for advising Franklin not to testify "based on an erroneous belief of what he would say." Doc. 1 at 9; Doc. 24 at 2. In support, Franklin alleges:

> Petitioner's trial counsel wholly failed to conduct a meaningful investigation into Petitioner's testimony prior to the trial. This is primarily why counsel did not call Petitioner to testify in trial because he simply didn't know what Petitioner was going to say. Counsel's failure to conduct a meaningful investigation into Petitioner's testimony in a self-defense case was per se ineffective because Petitioner was the only and best witness to testify.

Doc. 1 at 9; *see also id.* at 22-24. Concerning exhaustion of state remedies, Franklin asserts that he did not raise this particular claim in his Rule 3.850 proceeding, but that he nevertheless is entitled to *de novo* review here, because he lacked counsel in state court. Doc. 1 at 9, 11 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)); Doc. 24 at 2-4 (same).

The State asserts that Franklin's claim is procedurally defaulted. The State explains that in state court, Franklin asserted a different claim, namely, that counsel was ineffective for not "letting" Franklin testify and for refusing to call him as a witness despite Franklin's desire to testify. Doc. 18 at 22, 31-35.

## A.    *Franklin's Rule 3.850 Proceeding*

In "Ground One" of Franklin's first Rule 3.850 motion, Franklin claimed that Eagen was ineffective for failing and refusing to call Franklin to testify even though

Franklin "is the only one who can testify to his side in a self defense case." Doc. 17, Ex. 37 at 23. Franklin alleged that prior to trial, he asked Eagen to prepare him to testify and to call him to testify at trial, but Eagen refused and "did not let" Franklin testify. *Id*. at 24. Franklin alleged that Eagen's stated reasons were (1) Franklin's criminal history (two felonies); (2) Eagen did not want Franklin to tell the jury he had a gun; and (3) Eagen "would tell [Franklin's] side of the story." *Id*. at 24.

The state circuit court conducted an evidentiary hearing in which Franklin and Eagen testified. Doc. 17, Ex. 53 at 46-125. Franklin questioned Eagen about Eagen's defense strategy, including whether it aligned with Florida's "Stand Your Ground" law. Eagen explained that the defense theory at both Franklin's first and second trials was not "Stand Your Ground," but rather standard self-defense. Ex. 53 at 50-51. Eagen explained:

> A [Eagen]: [W]e did not want you [Franklin] to be portrayed to the jury of sitting in your driveway with a gun in your hand which would have been the only way – other way that you would have gotten a gun in that – in that instance unless the way that we argued which is that you fought with the – or hassled with the –
>
> Q [Franklin]: Why – why – let me ask you this. Excuse me. Why did you not let me testify at my trial which I was – right to testify? Why did you not let me testify?
>
> A: Again, I don't – I never don't let anyone testify. We – you go through the colloquy. You go through the decision. It's always your decision to testify. I can only recommend that you don't testify because I don't think it's a good idea.

Q:  Did you speak with me about testifying before the trial?

A:  I spoke to you numerous times about testifying and including the time at the trial – both trials.
> . . . .

> I – I – I did the same thing with you, Mr. Franklin, I do with every other client that I've done for 29 years. And that is I present the fact that it's your decision whether you testify or not. I can only give you my legal advice as to whether or not I think it's a good idea. I don't keep people from testifying.

Ex. 53 at 50-52.

When Franklin asked Eagen why he chose self-defense instead of Stand-Your-Ground, Eagen explained:

A:  One case puts a gun in your hand while you're sitting out in the driveway waiting for them to get there, the other one doesn't.

> . . . .

> It would be ridiculous for me to tell a jury that you left your house with a revolver, a six shooter, sitting in your driveway with a revolver waiting on these people to show up and then claim that you were standing – and you were standing your ground because they came armed and you were going to – you knew they were armed. You had a fear of it so you went down in your driveway and you sat there with a gun. That would have been a ridiculous thing to put before the jury and it wouldn't have got hung the first time and I doubt they would have stayed out that long the second time.

> The fact was I didn't want to put a gun in your hand. I came up with a plausible scenario where you got control of the gun or at least manipulated the gun in such a way that not only shot the – the deceased but also shot the female that got shot in the leg [sic].

Now, you know, I understand coming back years you might say there was a different way to do it. But that was the smart way to do it at the time. You knew that's what we were doing and that's what we did.

Q [Franklin]:  You do not have a right to stand your ground and fight force with force, including deadly force, if you believe you are in danger, imminent danger?

A:  No. If you had stayed in the house with your gun, if you had called the police, if they had broken into your house and you had shot them coming in, that would have been a different scenario. But, Mr. Franklin, I'm sorry. You may disagree with me but I don't think it plays well to a jury to say that you were sitting there on your car with your revolver waiting for them to arrive.

Ex. 53 at 67-69.

Franklin testified at the Rule 3.850 evidentiary hearing that although he believed that his own testimony was "vital" to his case, he decided not to testify because Eagen assured him that he (Eagen) would tell the jury Franklin's "side of the story." Ex. 53 at 96-97. Franklin explained:

THE DEFENDANT:  Mr. Eagen told me, you know, the judge asked me, Mr. Franklin, did you want to testify. I said yes, sir. Mr. Eagen stood up and said, Your Honor, I would like to talk to my client about this.

THE COURT:  You're talking about the first trial; right?

THE DEFENDANT:  The second trial. Mr. Eagen stood up and said, Your Honor, I would like to talk to my client about this before we make a decision. I asked – the judge said, Mr. Franklin, it's up to you if you want to testify and I said I would like to talk to my father about it.

First, the judge said I'll give you a recess to do that so that's what I did. And I talked to my father and Mr. Eagen and Mr. Eagen said that

> I didn't need to testify because he was going to tell my side of the story. So that was the reason why I chose not to testify, because Mr. Eagen said that he was going to tell my side of the story.
>
> In the end, Mr. Eagen never told not one ounce of my side of the story. He told a story that was unbelievable. . . .

Doc. 17, Ex. 53 at 97-98.

> At the conclusion of the evidentiary hearing, the state circuit court ruled:

> THE COURT:   All right. I'm going to deny the motion for post-conviction relief. I'm going to go through each of the grounds. If I miss any, make sure and have me clarify that.
>
> Failure to call defendant as a witness. Judge Carroll asked Mr. Franklin multiple times whether he desired to testify or not. He, in each instance – in each instance said he did not choose to testify. I accept Mr. Eagen's testimony that he simply advised him what he thought was his best course. It was a strategy admonition. No attorney can 100% guess what someone should or should not do. But it's crystal clear that was Mr. Franklin's choice and he made his choice repeatedly.

Doc. 17, Ex. 53 at 120-21. The court's oral rulings were followed by a written order

denying Franklin's Rule 3.850 motion. Doc. 17, Ex. 53 at 37. The written order

stated in relevant part:

> Based on the reasons as announced on the record, the Court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency.

Doc. 17, Ex. 53 at 37. The First DCA summarily affirmed without explanation. Doc.

17, Ex. 57.

**B.    Franklin's Claim That Counsel Failed to "Investigate" Franklin's Proposed Trial Testimony Is Procedurally Defaulted and Is Not Substantial**

"[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously." *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). "Allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's full and fair opportunity to address the claim on the merits. The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the serious and meaningful exhaustion of claims that Congress intended." *Footman*, 978 F.2d at 1211 (internal quotation marks and citation omitted). "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley*, 377 F.3d at 1344.

Franklin concedes that his current habeas claim is a "new argument" that he did not present to the state courts. Doc. 1 at 9, 11; Doc. 24 at 2-4. Franklin asserts that the reason he did not exhaust this new "failure to investigate" claim is that he first discovered it at the Rule 3.850 evidentiary hearing when he heard Eagen testify. Franklin maintains that it was not until then that he learned that Eagen did not

actually know—and had a mistaken belief about—what Franklin's "side of the story" was. Doc. 24 at 3-4.

Franklin emphasizes that unlike his state-court claim, he now is alleging that Eagen was ineffective "for failing to investigate his testimony, and advising him not to testify based on an erroneous belief of what he would say." Doc. 24 at 2; *see also id*. at 4 (complaining that Eagen "erroneously assumed the substance of Petitioner's testimony, without any investigation"). Franklin argues that his procedural default of this new claim is excused under *Martinez* because he did not have counsel in his Rule 3.850 proceeding. Doc. 24 at 2-4.

In *Martinez*, the Supreme Court held that: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a *substantial* claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17 (emphasis added). Regarding the showing of a "substantial" claim, a habeas petitioner "must demonstrate that 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1270 (11th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Franklin's claim that Eagen was ineffective for "failing to investigate his testimony," Doc. 24 at 2, is not substantial for several reasons. First and foremost, Franklin does not explain why *he failed to inform Eagen* of his side of the story regardless of whether Eagen asked for it. "The information provided by a defendant with regard to any possible defenses is relevant to the scope of counsel's investigation." *Broadnax v. Comm'r, Ala. Dep't of Corr.*, 996 F.3d 1215, 1224 (11th Cir. 2021); *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."). If Franklin did not tell Eagen information that was within Franklin's knowledge and that was crucial to the defense, his "lawyer [was] not ineffective for failing to discover or to offer [such] evidence." *Newland v. Hall*, 527 F.3d 1162, 1202 (11th Cir. 2008) (internal quotation marks and citations omitted); *see also Callahan v. Campbell*, 427 F.3d 897, 934-35 (11th Cir. 2005) (counsel's investigation was reasonable when defendant did not tell counsel he was abused and there was no documentation of abuse in records counsel obtained).

Franklin fares no better to the extent that he claims Eagen was ineffective for "advising [Franklin] not to testify based on an erroneous belief of what he would

say." Doc. 24 at 2. Again, Franklin fails to explain why, during his discussions with Eagen about whether to testify, he did not outline his "side of the story" to Eagen to ensure that there was no misunderstanding and that Eagen had accurate information on which to base his advice.

In that regard, it bears noting that Franklin knew, *before* he decided not to testify at his second trial, precisely what Eagen's defense theory was, and whether his own testimony would enhance that defense. Franklin sat through the first trial where Eagen had presented essentially the same defense. At Franklin's second trial, he heard all of the State's evidence, heard Eagen's deferred opening statement just before Eagen presented the defense case, and heard the testimony of all the defense witnesses, including Tyson. Franklin also had been advised by the trial judge of several factors he should consider when deciding whether to testify. One of those factors was:

> Another thing you must consider is that when we get to closing argument, the lawyers can only argue facts that are in evidence. **So, if there is something that a fair inference can't be drawn from the State's case or the cross examination and you're the only person that can testify to that fact, well, that's part of the strategy decision that you would have to weigh.**

Doc. 17, Ex. 17 at 113 (emphasis added).

In short, Franklin cannot legitimately argue that Eagen was ineffective for failing to draw information out of Franklin—information that Franklin knew was

relevant, but chose not to share. Thus, for all of the reasons discussed above, Franklin has not shown that his procedurally defaulted claim—that Eagen was ineffective for failing to "investigate" Franklin's testimony—is substantial. Franklin is not entitled to habeas relief on Ground One.

### C.    *The State Court's Rejection of Franklin's Claim Concerning Counsel's Failure to Call Him to Testify Was Consistent with Clearly Established Federal Law*

To the extent Franklin seeks federal habeas review of the ineffective-assistance claim he *did* exhaust in state court—that Eagen was ineffective because he "failed to call" Franklin and "did not let" Franklin testify—his claim still fails. *See* Doc. 17-37 at 23, 24. The state circuit denied that claim on the merits, and the First DCA summarily affirmed.

The First DCA's summary affirmance is an "adjudication on the merits" of the claim Franklin raised in his Rule 3.850 proceeding and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Franklin's claim for the reasons provided by the state circuit court.

The state court's decision was not "contrary to" clearly established Federal law, because the state court applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Franklin must show that the state court's application of the *Strickland* standard was unreasonable, or that its decision was based on an unreasonable determination of the facts.

In reviewing the state court's decision, this court defers to the state court's factual findings because they are amply supported by the state-court record and because Franklin has not rebutted them with clear and convincing evidence to the contrary. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden

of overcoming the presumption of correctness by clear and convincing evidence.")
(citing 28 U.S.C. § 2254(e)). This deference extends to the state court's
determination that Eagen's evidentiary hearing testimony was credible. Eleventh
Circuit precedent requires this deference. "Determining the credibility of witnesses
is the province and function of the state courts, not a federal court engaging in habeas
review. Federal habeas courts have 'no license to redetermine credibility of
witnesses whose demeanor has been observed by the state trial court, but not by
them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422,
434 (1983)).

The trial transcript confirms that as the State was winding down its case, the
trial judge discussed with Franklin that during the overnight recess Franklin would
need to decide whether he was going to testify the next day. Doc. 17, Ex. 17 at 110-
11. The judge informed Franklin that Franklin had "the absolute right to control"
whether or not he testified. *Id*. at 111. The judge then detailed a number of factors
Franklin should consider before making his decision. *Id*. at 111-13.

The next day, after the State rested, Eagen made his deferred opening
statement in which he outlined Franklin's defense. Doc. 17, Ex. 17 at 228-32. After
Eagen presented the last defense witness (Mr. Tyson) but before the defense rested,
this exchange occurred outside the presence of the jury:

THE COURT:    Mr. Eagen, do you anticipate calling any further witnesses?

MR. EAGEN:  No, Your Honor, I do not. And I will put on a – and you can inquire as to Mr. Franklin if he wishes to testify.

THE COURT:    And, Mr. Mutz [Prosecutor], at this point do you anticipate a rebuttal case?

MR. MUTZ:  No, Your Honor.

THE COURT:  All right. Well, Mr. Franklin, again, we talked the other – I can't remember when it was we'd talked, whether it was today or yesterday, about whether or not you wish to testify, but we went over those things to think about. And then this morning I know we had the medication issue, but we did get the medication to you; correct:

THE DEFENDANT:  Yes. Sir.

THE COURT:  You are doing fine. And, I mean, I know it's late in the day. It's a quarter to 6:00, but you're hanging in there okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you had a chance to discuss with Mr. Eagen as to whether you wish to testify or not?

THE DEFENDANT:  Can I ask to discuss it with my dad?

THE COURT:  Sure. Oh, with his dad?

Well, certainly, I don't know how we do it here, but I know he can have input with Mr. Eagen.

All right. Let me give you all a few minutes.

. . . .

Page 28 of 45

THE COURT:  Well, let me let you all talk for a few minutes. And if you want, we can – I'm sure Mr. Mutz and all can step outside. I will step outside. We will give you as much privacy as you need.

Doc. 17, Ex. 17 at 375-76, 378.

After the recess, the judge inquired of Franklin:

THE COURT:  Mr. Franklin, Mr. Eagen, have you had a chance to chat?

MR. EAGEN:  We have, Your Honor.

THE COURT:  All right. And, Mr. Franklin, have you made a decision as to whether you wish to testify or not?

THE DEFENDANT:  Yeah. I'm not going to testify.

*Id*. at 379.

On this record, fairminded jurists could agree with the state court's conclusion that Franklin failed to show that Eagen unconstitutionally interfered with, or was ineffective concerning, Franklin's right to testify. Franklin is not entitled to habeas relief on Ground One.

**Ground Two**    **"Trial Counsel Was Ineffective for Failing to Object to Initial Aggressor Jury Instruction Which Negated Sole Theory of Defense." Doc. 1 at 11.**

Franklin alleges that Eagen was ineffective because he failed to object to the trial court instructing the jury on section 776.041(2), Fla. Stat. (2012), which Franklin refers to as the "initial aggressor instruction." Doc. 1 at 11; Doc. 24 at 15-

16. The instruction was part of the jury instructions on Justifiable Use of Deadly

Force:

### JUSTIFIABLE USE OF DEADLY FORCE

An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Joshua Franklin is charged if the death 6f Robert Simmons-Goodwin resulted from the justifiable use of deadly force.

"Deadly force" means force likely to cause death or great bodily harm. A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent

1.    imminent death or great bodily harm to himself or another, or

2.    the imminent commission of a forcible felony (i.e. aggravated battery, robbery) against himself or another.

**However, the use of deadly force is not justifiable if you find that Joshua Franklin initially provoked the use of force against himself unless:**

(a)    The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm

or

(b)    In good faith, the defendant withdrew from physical contact with his assailant(s) and clearly indicated to his assailant(s) that he wanted to withdraw and stop the use of deadly force, but they continued or resumed the use of force.

Doc. 17, Ex. 7 at 6 (challenged instruction emphasized); *see also* Doc. 24 at 15-16.

The parties agree that Franklin exhausted this claim by presenting it to the state courts in his Rule 3.850 proceeding. Doc. 1 at 11-12; Doc. 18 at 22. The State asserts that Franklin is not entitled to habeas relief because the state court rejected this claim on the merits, and Franklin fails to satisfy § 2254(d)'s demanding standard. Doc. 18 at 36-42.

## A.    *The State Court's Decision*

Franklin presented this claim to the state court as "Ground Two" of his Rule 3.850 motion. Doc. 17, Ex. 37 at 29-35. At the conclusion of the evidentiary hearing, the state circuit court ruled:

> Ground two, I don't find there's anything improper about the jury instructions. To the extent there's anything that can be argued about it, it was certainly not ineffective assistance of counsel. Nor do I find that he – the defendant was prejudiced by the jury instructions. They were a fair recitation of the law at the time.

Doc. 17, Ex. 53 at 121. The court's oral ruling was followed by a written order denying relief for Franklin's failure to establish deficient performance and prejudice. Doc. 17, Ex. 53 at 37. The First DCA affirmed without explanation. Doc. 17, Ex. 57.

## B.    *Franklin Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Franklin's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the

First DCA rejected Franklin's claim for the reasons provided by the state circuit court.

The state court's decision was not "contrary to" clearly established Federal law, because the state court applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405–06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Franklin must show that the state court's application of the *Strickland* standard was unreasonable.

Franklin's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining that trial counsel's failure to object to the instruction was deficient, but first this court would have to conclude that the state court misinterpreted state law concerning whether the instruction should be included. Where the Florida state courts "already ha[ve] told us how the issues would have been resolved under Florida state law had [trial counsel] done what [Franklin] argues he should have done," "federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (internal quotation marks and citation omitted); *see also Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension, we must defer to the state's construction

of its own law when the validity of the claim that [trial] counsel failed to raise turns on state law." (internal quotation marks and citation omitted)).

Because the Florida courts determined that there was no error in the jury instructions, and because this court must defer to that determination of state law, Eagen cannot be found ineffective for failing to object. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Burgess v. McNeil*, 357 F. App'x 206, 212-13 (11th Cir. 2009) (deferring to state courts' determination that there was no error under state law in the jury instructions; holding that if the jury instructions were correct under Florida law "as the Florida courts have told us they were," counsel's performance in failing to challenge them cannot be considered deficient).

The state court's rejection of Franklin's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Franklin is not entitled to habeas relief on Ground Two.

**Ground Three**    **"Trial Counsel Was Ineffective For Failing to Impeach Witness Latonya with her prior inconsistent testimony regarding whether she parked her vehicle behind Mr. Franklin's vehicle effectively blocking him in from escaping." Doc. 1 at 13.**

Franklin alleges that Eagen was ineffective for failing to use Ms. Askew's testimony in Franklin's first trial to impeach her testimony in his second trial. Specifically, Franklin alleges that at his first trial, Askew testified that she parked her truck behind Franklin's vehicle and that in order for Franklin to leave, she would have had to move her car forward. Doc. 1 at 13. Franklin alleges that at his second trial, Askew testified that her truck was not blocking Franklin's truck from leaving the scene. *Id*. at 25. Franklin faults Eagen for failing to impeach Askew on this essential fact. *Id*.

The parties agree that Franklin exhausted this claim by presenting it to the state courts in his Rule 3.850 proceeding. Doc. 1 at 13-14; Doc. 18 at 22. The State asserts that Franklin is not entitled to habeas relief he fails to satisfy § 2254(d)'s demanding standard. Doc. 18 at 43-44.

A.    *The State Court's Decision*

Franklin presented this claim to the state court as "Ground Five" of his Rule 3.850 motion. Doc. 17, Ex. 37 at 43-45. At the conclusion of the evidentiary hearing, the state circuit court ruled:

> As to failure to impeach of LaTonya Askew, Tamisha Berger, I
> don't find that that has been established. Impeachment can be done in
> many ways. Simply asking them about it is probably the least effective
> way. In this situation, Mr. Eagen impeached them indirectly with other
> testimony that was presented and the contradictions between them. I
> don't find any ineffective assistance of counsel has been shown nor any
> prejudice.

Doc. 17, Ex. 53 at 122. The court's oral ruling was followed by a written order

denying relief for Franklin's failure to establish deficient performance and prejudice.

Doc. 17, Ex. 53 at 37. The First DCA summarily affirmed. Doc. 17, Ex. 57.

### B.    *Franklin Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of

Franklin's claim, and is reviewed under § 2254(d)'s deferential standard. *See*

*Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the

First DCA rejected Franklin's claim for the reasons provided by the state circuit

court.

As with Franklin's previous claim, the state court's decision was not "contrary

to" clearly established Federal law, because the state court applied the two-part

*Strickland* standard. *See Williams*, 529 U.S. at 405-06. In reviewing the

reasonableness of the state court's application of *Strickland*, this court defers to the

state court's factual findings, because they are amply supported by the record, and

because Franklin has not rebutted them with clear and convincing evidence to the

contrary. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e); *Consalvo*, 664 F.3d at 845.

The transcript of Franklin's second trial confirms that Eagen thoroughly cross-examined Askew on her version of the incident. Eagen brought out some inconsistencies on cross-examination while bringing out others during closing argument. Doc. 17, Ex. 16 at 352-89; Doc. 17, Ex. 17 at 493-531. Fairminded jurists could agree with the state court's determination that Eagen's efforts with regard to cross-examining Askew were reasonable. The decision whether and how to cross-examine a witness "is a tactical one well within the discretion of the defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001).

Additionally, the transcript of Franklin's *first* trial establishes that Askew did not testify that her truck was parked in such a way that it blocked Franklin from leaving in his car. Doc. 20, Ex. 1 at 53-55.[7] At the first trial, Askew testified:

Q [Prosecutor]:  Was your truck all the way in his driveway?

A [Ms. Askew]:  No, we wasn't even in his driveway. It's like, say this is his driveway. My car was on the tip of his driveway going that way (Indicating.)

Q:  Were you blocking his driveway?

A:  No, I wasn't. He could have backed out at any time.

---

[7] Citations to page numbers of the trial transcript in Franklin's first trial are to the page numbers of the original document that appear in the upper right corner of the page.

Doc. 20, Ex. 1 at 55; *see also id*. at 56-57 (Askew describing to the jury, using a photograph of Franklin's house that showed his driveway and the street, where she parked her truck; Askew testifying that Franklin's car was parked in his driveway and that her truck was parked "on the side of the road" "to the left" of the driveway; Askew stating that Franklin "could have pulled out. There was more room and no other cars out there; wasn't nothing out there."); *Id*. at 67-68 (Askew describing that one of her passengers was yelling for her to "leave completely," i.e., "move the truck" because Franklin was shooting at them).

The state court's rejection of Franklin's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Franklin is not entitled to habeas relief on Ground Three.

**Ground Four**      **"Trial Counsel Was Ineffective for Failing to Call Witness Steven Been as a rebuttal witness in support of theory of defense." Doc. 1 at 15.**

Franklin claims that Eagen was ineffective for failing to call officer Steven Been to testify as a "rebuttal witness" to improve Tyson's credibility with the jury. Doc. 1 at 15. Franklin explains that at trial, the prosecutor attempted to impeach Tyson's credibility by suggesting that he and Franklin concocted Tyson's testimony while in jail together. *Id*. at 26. Franklin claims that Been "would have testified that, contrary to the state's attempted impeachment of Tyson, Tyson did in fact tell him

the exact same story during a meeting they had prior to charges even being filed in Franklin's case." *Id*. at 26.

The parties agree that Franklin exhausted this claim by presenting it to the state courts in his first Rule 3.850 proceeding. Doc. 1 at 16; Doc. 18 at 22. The State asserts that Franklin is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 18 at 45.

## A.   *The State Court's Decision*

Franklin presented this claim to the state court as "Ground Six" of his Rule 3.850 motion. Doc. 17, Ex. 37 at 45-47. At the conclusion of the evidentiary hearing, the state circuit court ruled:

> Ground six, failure to call Steve Been as a witness. There's been nothing established here today of any relevant testimony Mr. Been could have been [sic] presented. I have not heard from Mr. Been. I don't know whether his testimony was admissible or inadmissible.

> There is extensive discussion at trial about Mr. Been testifying or not testifying. It's obviously an issue that was argued in both trials about his testimony. Mr. Eagen was obviously well aware of it. In – at page 770 to 773, there is a discussion about Mr. Tyson's testimony and how it relates to Mr. Been. It's not crystal clear to me what Mr. Been would have said. But it's clear that Mr. Eagen was aware of it.

> Since it's not been presented to me, there is no basis for me to find that his testimony was admissible or beneficial to the defense. Obviously, Mr. Eagen was aware of it. I don't find there was any ineffective assistance of counsel nor any prejudice to the defendant.

Doc. 17, Ex. 53 at 122-23. The court's oral ruling was followed by a written order denying relief for Franklin's failure to establish deficient performance and prejudice. Doc. 17, Ex. 53 at 37. The First DCA summarily affirmed. Doc. 17, Ex. 57.

### B.    *Franklin Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Franklin's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Franklin's claim for the reasons provided by the state circuit court.

Fairminded jurists could agree with the state court's conclusion that Franklin failed to establish that Eagen was ineffective for failing to call Been. A petitioner's burden to establish prejudice under *Strickland* is particularly "heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006); *see also Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) ("Claims that counsel failed to call witnesses are not favored on federal habeas review because . . . speculation about what witnesses would have said on the stand is too uncertain."). For that reason, the Eleventh Circuit has held that "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the

failure to interview or call that witness." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir.), *cert. denied sub nom. McKiver v. Inch*, 211 L. Ed. 2d 260, 142 S. Ct. 441 (2021).

Here, Been did not testify at the state postconviction evidentiary hearing. Franklin's assertions about the substance and admissibility of Been's testimony are purely speculative. Accordingly, it was reasonable for the state court to conclude that Franklin failed to carry his burden to show that Been's testimony would have been admissible and overall favorable to his defense, much less that there was a reasonable probability of it changing the outcome of the trial.

The state court's rejection of Franklin's claim was based on a reasonable determination of the facts and involved a reasonable application of the *Strickland* standard. Franklin is not entitled to habeas relief on Ground Four.

**<u>Ground Five</u>**    **<u>"Trial Counsel Was Ineffective for Failing to Request For a Specially Modified Instruction On Justifiable Use of Deadly Force to Instruct the Jury that The Instruction Also Applied to the Lesser Offenses." Doc. 1 at 27.</u>**

Franklin's final claim alleges that Eagen was ineffective for failing to request an additional jury instruction advising the jury that the instruction on "Justifiable Use of Deadly Force" applied to all lesser-included offenses. Doc. 1 at 27-28. Franklin asserts that "the jury was never given a chance to consider Franklin's self-defense theory as applied to the lesser-included offenses for which he was

convicted." *Id*. at 27. Franklin claims that he exhausted this claim by presenting it in his Rule 3.850 proceeding. *Id*. at 28.

The State asserts that this claim is unexhausted and procedurally defaulted, because Franklin never presented it to the state courts. The State explains that contrary to Franklin's assertion, he did not present this claim in his Rule 3.850 motion or at the evidentiary hearing, nor did he present it in his postconviction appeal. Doc. 18 at 46. The State also argues that the claim lacks merit. *Id*. at 46-47.

Franklin's reply does not address the procedural default issue. Doc. 24.

### A.    *Franklin's Claim is Procedurally Defaulted*

The state-court record establishes that Franklin did not raise this claim in his first (or any other) Rule 3.850 proceeding. Although Franklin claimed in Ground Two of his Rule 3.850 motion that counsel was ineffective for failing to make particular objections to the jury instructions, he did not include this particular alleged error. Doc. 17, Ex. 37 at 29-35. Franklin also did not mention this alleged error at the postconviction evidentiary hearing or in his postconviction appeal. *See* Doc. 17, Ex. 53 at 46-125 (Evidentiary Hr'g Tr.); Doc. 17, Ex. 54. Accordingly, this ineffective-assistance claim is unexhausted.

Any attempt by Franklin to return to state court to exhaust this claim would be procedurally barred under Florida law. *See* Fla. R. Crim. P. 3.850(h) (prohibiting

a second or successive motion that asserts grounds that could have been asserted in a prior motion). Thus, this ineffective-assistance claim is procedurally defaulted.

**B.** ***Franklin's Claim Is Not Substantial***

Franklin makes none of the requisite showings to excuse his procedural default. He has not addressed the State's procedural default defense, much less shown that his procedural default should be excused. Doc. 24.

Even if Franklin claimed that *Martinez* applied to excuse his procedural default, that argument would fail because his ineffective-assistance claim is not substantial. At the beginning of the final jury instructions, in the "Introduction to Homicide" instruction, the jury was instructed that: "A killing that is excusable or was committed by the use of justifiable deadly force is lawful." Doc. 17, Ex. 7 at 2. Right after that, in the "Justifiable Homicide" instructions, the jury was instructed that: "The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing." *Id.* at 2.

In the very next section, the "Excusable Homicide" instruction, the jury was instructed that: "The killing of a human being is excusable, and therefore lawful" if "the killing is committed by accident and misfortune." *Id.* at 3. It is clear that the jury *was* given a chance to consider Franklin's self-defense theory as applied to the

Page 42 of 45

lesser-included offenses. It also is clear that had the jury truly believed that "the killing," in whatever degree, was justified, they would have found Franklin not guilty because such killing was lawful.

Franklin has not shown that this procedurally defaulted claim is substantial. Franklin's Ground Five does not warrant federal habeas relief.

## IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.

at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Joshua D. Franklin*, Leon County Circuit Court Case No. 2012-CF-3405, be **DENIED**.

2.     The District Court **DENY** a certificate of appealability.

Page 44 of 45

3.    The clerk of court close this case file.

At Pensacola, Florida, this <u>7th</u> day of November, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**